UNITED STATES of America,
Plaintiff–Appellant,

v.

Scott F. SHERBURNE; Joseph J. McKay; Blaze Construction, Defendants–Appellees.

United States of America,
Plaintiff–Appellee,

v.

Scott F. Sherburne, Defendant–Appellant.

United States of America,
Plaintiff–Appellee,

v.

William Harvey Aubrey, Defendant–Appellant.

Nos. 99–30213, 99–30214 and 99–30218.

United States Court of Appeals,
Ninth Circuit.

Argued & Submitted Jan. 8, 2001

Filed May 21, 2001

Karin B. Hoppmann, Criminal Division–
Appellate Section, Department of Justice,

Washington, D.C., for plaintiff-appellant/plaintiff-appellee United States.

Patrick F. Flaherty, Great Falls, Montana, for defendant-appellee/defendant-appellant Scott F. Sherburne.

John E. Smith, Smith & Thiel Law Offices, Missoula, Montana, for defendant-appellee Blaze Construction.

Ward E. Taleff, Alexander, Baucus, Taleff & Paul, P.C., Great Falls, Montana, for defendant-appellant William Harvey Aubrey.

Before: McKEOWN, W. FLETCHER, and RAWLINSON, Circuit Judges.

McKEOWN, Circuit Judge:

This appeal arises out of the award of attorney's fees to certain criminal defendants-and the denial of fees to others-under the Hyde Amendment, which authorizes fees in limited circumstances in criminal cases. In the underlying case that led to the fee award, the United States prosecuted thirteen defendants for alleged abuses in the funding and construction of a housing development on the Blackfeet Indian Reservation in Montana. Among the thirteen defendants there were sixteen counts and over fifty charged offenses, but no convictions.

Following the unsuccessful prosecution, the defendants sought attorney's fees under the Hyde Amendment. The district court awarded fees to Blaze Construction, Inc. ("Blaze") and Scott Sherburne,[1] concluding that their prosecution had been "vexatious," and denied fees to various other claimants, including Appellant William

Harvey Aubrey. The United States now appeals the award of fees to Blaze and Sherburne. Aubrey separately appeals the denial of his fee request. Sherburne cross-appeals the district court's decision to limit his fees to seventy-five dollars per hour, the ceiling for fees under the Criminal Justice Act. We conclude that the district court applied the wrong legal test for awarding fees under the Hyde Amendment, and therefore we vacate and remand. We further conclude that attorney's fees awarded under the Hyde Amendment should not be capped at seventy-five dollars per hour.

## FACTUAL AND PROCEDURAL BACKGROUND

In the early 1990s, Blaze offered to prepare an application for federal grant funds for the Blackfeet Tribe of Montana ("the Tribe"), under the HOME program. The HOME program, operated through the Department of Housing and Urban Development ("HUD"), was designed to fund the construction of private homes for low income Native Americans. The Tribe accepted Blaze's offer, and Blaze—through its president, William Harvey Aubrey—prepared and submitted a grant application to HUD. In the application, the Tribe sought $14,877,000 in federal funds to build seventy-one homes. That federal money was to be supplemented by land donations from the Tribe, federal home loans through the Blackfeet Bank, lease payments from the tenants, and tenant subsidy vouchers. As the contractor, Blaze would receive $5,516,538.

The application was eventually approved, in the exact amount earmarked for Blaze: $5,516,538. Blaze then submitted a bid to the Tribe to perform the required construction work. Blaze proposed to

---

1. The court also granted fees to Defendant Joseph McKay. The United States has not appealed that fee award.

build seventy-two homes, at a cost of $87,000 each. It requested $5,990,000 to fund the project.[2] The grant would fund the construction of sixty-three units, and Blaze would "[p]rovide, obtain and manage all other (non-government) monies or contributions required for additional units beyond the 63 homes funded by this HUD home grant." Trial testimony suggested that this would be accomplished by mortgaging some of the original homes, and using the resulting funds to build the remainder of the proposed units. Other evidence presented at trial suggested that the funds would have come from the Tribe itself. In the end, only about fifty homes were built, but all of the HUD money was spent.

From beginning to end, from initial application to eventual construction, the process was plagued with difficulty and controversy. To give a flavor of the allegations, we set forth only a few of the issues that arose. According to various HUD employees, Blaze's application was deficient, and was successful only because it was muscled through by a HUD supervisor, Defendant Gloria Dale Lewis—who, according to the United States, was in cahoots with Blaze. Lewis ostensibly sought to bypass the bidding process and to award the contract directly to Blaze. Following an internal investigation, Lewis was removed from supervision of the program, and the situation was reported to the Office of the Inspector General.

Other difficulties arose out of the financial management of the grant. The Tribe requested a "drawdown" of grant money (i.e., an advance), although the money on these projects was typically distributed only as reimbursement. Moreover, according to another HUD employee, the Tribe sought money to pay for land that it had promised to donate.

The housing lottery used to distribute the homes was attacked as "fixed." Many of the homes were awarded to individuals with personal connections to tribal insiders, and there was a pretrial admission by a Blaze employee—later recanted at trial—that Aubrey had manipulated the lottery.

The United States initiated its criminal investigation in 1994. The grand jury issued a first, sealed indictment in August 1997, and a second sealed indictment in December 1997.[3] In early 1998, the grand jury returned a third and final indictment, this time including Sherburne as a defendant.

Trial began in September 1998, and ended without any convictions. Some of the charges were dismissed pursuant to judgments of acquittal, see Fed.R.Crim.P. 29; other charges led to a hung jury, a mistrial, and eventual dismissal of the charges; and the jury acquitted on the remaining charges. In the defendants' view, this result was no surprise, as the government never really understood the intricacies of the transactions, the roles of HUD and the Tribe, or the details of the construction funding and the selection of tenants. They believe that the government jumped to conclusions based on superficial evidence, and ignored the complexities of the mortgage financing.

Following the trial, Defendants Blaze, Aubrey, Lodgebuilder, Sherburne, McKay, and the Wilsons moved for attorney's fees under the Hyde Amendment, which per-

---

**2.** There was ongoing adjustment to the amount of funding and the number of units to be built.

**3.** The first indictment charged Gloria Dale Lewis, William Harvey Aubrey, and Blaze.

The second indictment added Donald Lee Wilson, Lee Roy Wilson, Brenda Bernadette Todd, Colleen Catherine Wilson and Lodgebuilder Management, and excluded Gloria Dale Lewis.

mits a criminal defendant to recover fees when the government's "position" was "vexatious, frivolous, or in bad faith." 18 U.S.C. § 3006A Note. In awarding fees to Blaze and Sherburne, the court expressed misgivings about the prosecution's tactics. For instance, the court stated that the government's decision to dismiss the remaining charges following the mistrial, rather than to pursue a retrial, "raised issues about the government's motivation in this prosecution." Indeed, the court found that the government's insistence that it could prove the mistried charges, if it chose to proceed, was nothing more than "an effort to defeat applications for attorney's fees under the Hyde Amendment."

The court then analyzed the fee applications under the "vexatious" prong of the Hyde Amendment. Citing a district court case from Virginia, *United States v. Holland*, the court stated that the proper inquiry is whether "a reasonable prosecutor should have concluded that the applicable law and the available evidence were insufficient to prove the defendants' guilt beyond a reasonable doubt." *United States v. Aubrey*, No. CR 98–11–GF–DWM, slip op. at 11–12, 20 (D. Mt. filed May 12, 1999) (order granting attorney's fees) (quoting 34 F.Supp.2d 346, 364 (E.D.Va.), *vacated in part on other grounds*, 48 F.Supp.2d 571 (E.D.Va.1999), *aff'd*, 214 F.3d 523 (4th Cir.2000)).

The court first awarded fees to Sherburne, finding that "[t]he government's agents distorted the truth as to Sherburne's involvement, specifically regarding" certain letters attributed to Sherburne by the government, as "[t]he letters were written by another person." Moreover, in the court's view, "[t]he government refused to allow Sherburne to explain himself fully, and therefore, it ignored evidence." Finally, regarding the allegations of wire fraud, the court determined that the govern-

ment had "not presented any facts establishing any false representation made by Sherburne." In awarding fees, the court held that the rate is limited to seventy-five dollars per hour, as specified in the Criminal Justice Act.

The court also awarded fees to Blaze, concluding that "the government proceeded blindly without a sufficient understanding of the facts and the law on which it proceeded. The government misapprehended the issue of the mortgage financing and the reason why it was not accomplished."

Finally, the court denied fees to Aubrey and Lodgebuilder. It noted the "suspicious nature of Aubrey and Lodgebuilder's involvement in securing the grant funds"; suggested that "the circumstances surrounding Aubrey and Lodgebuilder's draw on the grant funds was questionable"; and further pointed to their acquisition of HUD insider information, and the possibility that the housing lottery had been rigged.

ANALYSIS

I. STANDARD OF REVIEW

We review for abuse of discretion a district court's ruling under the Hyde Amendment. *United States v. Lindberg*, 220 F.3d 1120, 1124 (9th Cir.2000). Thus, reversal is appropriate only if the reviewing court has "a firm conviction that the district court committed a clear error of judgment." *Id.* The court abuses its discretion when it makes an error of law, *Koon v. United States*, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), or rests its determination on a clearly erroneous finding of fact, *Marchand v. Mercy Medical Ctr.*, 22 F.3d 933, 936 (9th Cir. 1994). Likewise, an abuse of discretion occurs if the court "applies the correct law to facts which are not clearly erroneous

but rules in an irrational manner." *Friedkin v. Sternberg (In re Sternberg)*, 85 F.3d 1400, 1405 (9th Cir.1996), *overruled on other grounds by Murray v. Bammer (In re Bammer)*, 131 F.3d 788 (1997) (en banc).

## II. THE HYDE AMENDMENT

 Before considering the fee awards at issue here, we begin with the Hyde Amendment itself. The Hyde Amendment, passed in 1997 as part of the Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act of 1998, provides in relevant part:

> [T]he court, in any criminal case (other than a case in which the defendant is represented by assigned counsel paid for by the public) ... may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust. Such awards shall be granted pursuant to the procedures and limitations (but not the burden of proof) provided for an award under section 2412 of title 28, United States Code.

Pub.L. No. 105–119, Title VII, § 617, 111 Stat. 2519 (codified at 18 U.S.C. § 3006A Note). Through its use of disjunctive language, the statute establishes three separate grounds upon which attorney's fees may be awarded: for conduct that is vexatious, frivolous, or in bad faith. *United*

States v. Tucor Int'l, Inc.*, 238 F.3d 1171, 1178 (9th Cir.2001). Because the district court awarded fees under the "vexatious" prong of the Hyde Amendment, that is the sole term that concerns us here.[4]

 The term "vexatious" is not defined in the statute. Thus, we turn to the dictionary for guidance. *See Lindberg*, 220 F.3d at 1125. *Black's Law Dictionary* defines the term "vexatious" to mean "without reasonable or probable cause or excuse; harassing; annoying." *Black's Law Dictionary* 1559 (7th ed.1999). It also defines "vexatious suit" to mean a "lawsuit instituted maliciously and without good cause." *Id.* *Webster's Dictionary* gives similar direction; it defines "vexatious" to mean, among other things, "lacking justification and intended to harass." *Webster's Third New Int'l Dictionary* 2548 (3d ed.1961); *see also* 19 *Oxford English Dictionary* 586 (2d ed.1989) (defining "vexatious" for legal purposes as "[i]nstituted without sufficient grounds for the purpose of causing trouble or annoyance to the defendant").

 These definitions share two characteristics. First, each includes an element of maliciousness, or an intent to harass. Second, each definition contemplates a suit that is objectively deficient. (Although the definitions differ in their precise formulation—they refer variously to a lack of "reasonable cause," "probable cause," "good cause," or "sufficient grounds"—they each describe a lawsuit that lacks merit.) We conclude that for purposes of the Hyde

---

**4.** That being said, we are cognizant that we must "read the statute as a whole," *United States v. Morton*, 467 U.S. 822, 828, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984), and, in so doing, avoid interpreting the statutory terms in a manner that renders them "entirely redundant," *Kungys v. United States*, 485 U.S. 759, 778, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988). The definition of vexatiousness set forth *infra* fulfills these requirements. Unlike the term "frivolous," the term "vexatious" has both a

subjective and an objective component. *Black's Law Dictionary* 677 (defining frivolous in objective terms); *Legal Servs. of N. Cal., Inc. v. Arnett*, 114 F.3d 135, 141 (9th Cir. 1997) (same). Nor does the term "vexatious" overlap entirely with "bad faith." Bad faith has a variety of meanings, many of which are distinct from vexatiousness as we construe it below. *Cf. Fink v. Gomez*, 239 F.3d 989, 991–93 (9th Cir.2001) (discussing varieties of bad faith).

Amendment, the term "vexatious" includes both of these characteristics: subjective and objective.[5]

The standard employed by the district court differs markedly from our interpretation of the statute. The district court borrowed its interpretation from *United States v. Holland,* 34 F.Supp.2d 346 (E.D.Va.1999), framing the inquiry as "whether a reasonable prosecutor should have concluded that the applicable law and the available evidence were insufficient to prove the defendants' guilt beyond a reasonable doubt and, if so, was the continuation of the prosecution vexatious." [6]

■ A standard that focuses solely on the "reasonable prosecutor" and "proof beyond a' reasonable doubt" requires too much of the United States. The Hyde Amendment permits fees to be recouped for a vexatious litigating position. Put otherwise, fees are permissible when the prosecution was unwarranted because it was intended to harass and without sufficient foundation. But the district court's

test would permit fees whenever a "reasonable prosecutor" should have concluded that the case would be lost. These two standards are far from identical. To say in hindsight that a case could not be proved beyond a reasonable doubt is hardly the same as showing that the case was unfounded and intended to harass.

■ Furthermore, a pure reasonableness standard is particularly prone to judicial second-guessing. The trial process is fluid and involves multiple strategic and evidentiary decisions, many of which cannot be predicted at the outset, and many of which depend on contested evidentiary and other trial rulings—not to mention the uncertainties associated with witnesses' testimony. The trial process also implicates judgment, strategy and prosecutorial discretion. This is not to say that prosecutors may operate without limits, but simply that the test for awarding fees under the Hyde Amendment should not be an exercise in 20/20 hindsight based solely on reasonableness.

5. We recognize that this intent-based standard differs from the definition of "vexatious" as used in Title VII. *See Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). We hold that vexatiousness, as used in the Hyde Amendment, requires some ill intent; the Court in *Christiansburg* held that, as used in Title VII, "the term 'vexatious' in no way implies that the plaintiff's subjective bad faith is a necessary prerequisite to a fee award against him." *Id.* at 421. *Christiansburg,* however, arose in a very different context. First, the question before the Court was the appropriate standard for "award[ing] attorney's fees to a successful defendant in a Title VII action." *Id.* at 417, 98 S.Ct. 694. Unlike the Hyde Amendment, Title VII refers only to "prevailing part[ies]" and does not set out standards for the award. Second, in rejecting a subjective interpretation of the term "vexatious," the *Christiansburg* Court reasoned that such an interpretation would be surplusage, merely duplicating the inherent power of the courts. *Id.* at 419, 98 S.Ct. 694. But in the criminal context, the courts have no such inherent power. More-

over, the Hyde Amendment explicitly includes the term "bad faith," so the interpretive mechanism employed in *Christiansburg*—the desire to avoid rendering statutory terms redundant—is inapplicable here. Finally, a careful reading of the Court's subsequent decision in *Roadway Express, Inc. v..Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980), a definitive summary of the bases for sanctions under a court's inherent power, underscores the different context in which the Court addressed those issues.

6. Oddly enough, the *Holland* court elsewhere set forth a definition of vexatious that is consistent with ours: whether "a reasonable Prosecutor knew or should have known that the criminal referrals and the continued prosecution were 'lacking justification ... intended to harass ... and harassment by process of law.' " *Id.* at 360. In analyzing the application of the Hyde Amendment to the specific circumstances of this case, however, the district court did not appear to adopt this formulation.

This conclusion becomes clearer still when these two competing standards-subjective and objective deficiency versus "proof beyond a reasonable doubt"-are compared to a third, benchmark standard that we have previously rejected for purposes of the Hyde Amendment: the "substantially justified" standard employed in the Equal Access to Justice Act (EAJA). Under the EAJA, attorney's fees are to be awarded when the government's litigating position was not "substantially justified." 28 U.S.C. § 2412(d)(1). We have previously held that the "substantially justified" standard is inappropriate for the Hyde Amendment, because it requires too much of the prosecution, and thus would permit litigants to recoup fees too easily. *Lindberg*, 220 F.3d at 1124. But the *Holland* standard employed by the district court would permit fees to be awarded even more often, under an even more relaxed standard, than the "substantially justified" test. *Compare Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (defining "substantially justified" as "justified to a degree that could satisfy a reasonable person") *with* Model Crim. Jury Instr. 9th Cir. § 3.5 (defining "beyond a reasonable doubt").

We therefore conclude that the *Holland* standard is incorrect as a matter of law, and thus that the district court abused its discretion by employing it. We therefore vacate the award of fees to Sherburne and Blaze, and remand for the district court to apply the "vexatious, frivolous, or bad faith" standard as set forth above.

■ Because we vacate based on the legal standard employed by the district court, we do not evaluate the court's application of that standard. However, the award of fees to Sherburne requires renewed scrutiny on remand on additional grounds, unrelated to the correct legal standard to be applied. The district court concluded that government agents "dis-torted the truth as to Sherburne's involvement, specifically regarding letters written to Gerald Fritts." This statement appears to refer to Sherburne's Reply Brief on Application for Attorney's Fees, in which Sherburne contended—apparently for the first time—that he did not write the false letters in support of the Wilson mortgage. But the Hyde Amendment is predicated upon the government's litigating position. Evidence acquired after trial is logically irrelevant to that analysis, absent a showing of something more, such as, for instance, proof that the government deliberately suppressed, or willfully ignored, relevant evidence. Moreover, Sherburne's claimed realization that he had not written the letters was unsupported by any reference to the record, and directly conflicts with his prior admission that he wrote the false letters, facts that weigh against finding the prosecution to have been vexatious.

Similarly, the district court found that "[t]he government refused to allow Sherburne to explain himself fully, and therefore, it ignored evidence." This conclusion seems to be based on Sherburne's repeated assertion that the government had promised to conduct a follow-up interview with him, and that its failure to do so constituted a broken promise. Although it is true that the FBI agents stated their intention to "reconvene" with Sherburne, Sherburne has pointed to no evidence suggesting that "the government refused to allow Sherburne to explain himself fully," nor that it "ignored evidence." This determination, too, deserves careful attention on remand.

### III. THE DENIAL OF FEES TO AUBREY

■ We vacate the denial of fees to Aubrey. Under normal circumstances, the district court's denial of fees under the "substantially justified" standard would

necessarily preclude the award of fees under the more taxing standard set forth above. *See United States v. Truesdale*, 211 F.3d 898, 909 (5th Cir.2000) ("[I]f a movant is unable even to establish that the prosecution was not substantially justified, he certainly cannot establish that it was vexatious, frivolous, or brought in bad faith."). Here, however, we cannot resolve the issue so easily, as the district court's conclusions regarding Blaze Construction and Aubrey appear to be internally inconsistent.

It is not clear from the record why fees were awarded to Blaze Construction but denied to Aubrey. During the period in question, Aubrey was the president and sole shareholder of Blaze Construction. There is no evidence before us to suggest that Aubrey was acting outside the scope of his duties, nor any reason to prevent his actions from being imputed to Blaze.

Likewise, the court's reason for awarding fees to Blaze appears to conflict with its rationale for denying them to Aubrey. In awarding fees to Blaze, the court stated that "the government misapprehended the issue of the mortgage financing and the reason why it was not accomplished." But in denying fees to Aubrey, the court found that "[t]he government proceeded on the reasonable theory that Aubrey received $5.5 million to build 66 houses, yet only 51 houses were built."

Thus, on remand the district court should consider whether the actions of Aubrey are coextensive with those of Blaze, and to what degree the evidence overlaps. Unless there is an articulable reason to treat the two parties differently, fees should be awarded to both Aubrey and Blaze, or to neither.

## IV. SHERBURNE'S CROSS-APPEAL OF THE AMOUNT OF ATTORNEY'S FEES

Finally, Sherburne appeals the district court's determination to cap his attorney's fees at seventy-five dollars per hour. In setting this limitation, the district court relied on *United States v. Whitesell*, CR 97–18–BLG–JDS (D.Mont.1997), which concluded that fees awarded pursuant to the Hyde Amendment should be limited to seventy-five dollars per hour because that is the rate specified in the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A(d)(1).[7]

■ The Hyde Amendment provides that "awards [of attorney's fees] shall be granted pursuant to the procedures and limitations (but not the burden of proof) provided for an award under section 2412 of title 28, United States Code [the EAJA]." 18 U.S.C. § 3006A Note. The statute is explicit-the limitations of the EAJA apply. The EAJA caps attorney's fees at $125 per hour, 28 U.S.C. § 2412(d)(2)(A), not the $75 per hour ceiling of the CJA, 18 U.S.C. § 3006A(d)(1). If the district court decides on remand to award attorney's fees, those fees should be calculated in light of the "procedures and limitations," including the reasonableness standard, set forth in the EAJA.

## CONCLUSION

For the foregoing reasons, we vacate the award of fees to Sherburne and Blaze; vacate the denial of fees to Aubrey; and reverse the seventy-five dollar per hour limitation on attorney's fees.

---

7. *Whitesell* was reversed in pertinent part subsequent to the district court's decision in this case. *United States v. Whitesell*, Nos. 98- 30319, 99–30060, 1999 WL 1073823 (9th Cir. Nov.29, 1999) (unpublished).

**VACATED IN PART AND REVERSED IN PART.** Each party to pay its own costs on appeal.