UNITED STATES of America,
Plaintiff,

v.

Robert E. "Short" STEPHENS, Jr.,
Manchester Farming Partnership,
Lone Pine Land Inc., Priest Butte
Farm, Inc., Defendants.

No. CR–01–02–GF–ECR.

United States District Court,
D. Montana.

Nov. 6, 2001.

Carl E. Rostad, Office of the U.S. Attorney, Great Falls, MT, Leif M. Johnson, Office of the U.S. Attorney, Billings, MT, for Plaintiff.

Michael W. Cotter, Great Falls, MT, William C. Bridgforth, Pine Bluff, AR, for Robert E. Stephens, Jr., defendant.

Kenneth R. Olson, Olson Law Office, Great Falls, MT, for Manchester Farming Partnership, defendant.

Floyd D. Corter, Corder & Allen, Great Falls, MT, for Lone Pine Land, Inc., defendant.

Daniel Donovan, Thompson & Potts, Great Falls, MT, Priest Butte Farm, Inc., defendant.

## ORDER

EDWARD C. REED, JR., District Judge.

### PROCEDURAL HISTORY

On June 11, 2001, trial began in the above captioned case. The defendants Robert E. "Short" Stephens Jr., Manchester Farming Partnership, Lone Pine Land Inc., and Priest Butte Farm, Inc., (hereinafter "defendants") were charged with Conspiracy to Submit False Claims (18 U.S.C. § 286), and Mail Fraud (18 U.S.C.

§ 1341). Mr. Stephens was additionally charged with False Statements (18 U.S.C. § 1001). At the close of the government's case, the court heard Fed.R.Crim.P. 29 motions. The court granted Mr. Stephens' motion as to False Statements, but sent the remaining counts against all defendants to a jury. After deliberation, the jury returned a verdict of not guilty as to all defendants on all counts.

On July 18, 2001, Manchester Farming Partnership, Lone Pine Land, Inc. and Priest Butte Farm, Inc. (hereinafter "corporate defendants") filed motions for fees and litigation costs pursuant to the Hyde Amendment, (# 292), (# 285), and (# 288) respectively. The corporate defendants argue that the government's position in this case was vexatious, frivolous, and in bad faith. The United States filed an omnibus reply (# 295) arguing that good faith inferences existed from the evidence from which a jury could have found all defendants guilty on the remaining counts. The corporate defendants filed their respective replies (# 301), (# 298), and (# 300) on August 28, 2001.

### BACKGROUND

The Hyde Amendment was passed as part of the Commerce, Justice and State, the Judiciary and Related Agencies Appropriations Act of 1998. The goal of the amendment was to combat instances of prosecutorial misconduct by the United States. *See United States v. Gilbert,* 198 F.3d 1293, 1299–1303 (11th Cir.1999) (discussing legislative history). The amendment establishes three separate grounds on which attorney's fees and costs may be awarded: conduct that is (1) vexatious, (2) frivolous, or (3) in bad faith. *United States v. Tucor, Int'l, Inc.,* 238 F.3d 1171, 1178 (9th Cir.2001). The Hyde Amendment was modeled after the Equal Access to Justice Act, with two important

differences. First, the "vexatious, frivolous, or in bad faith" standard for recovery is a much higher standard than the "not substantially justified" language in the comparable statute EAJA. *United States v. Knott*, 256 F.3d 20, 28 (1st Cir.2001). Second, the Hyde Amendment places the burden of proof of prosecutorial misconduct on the defendant. *Id.*

## ANALYSIS

The Hyde Amendment is written in disjunctive language, which means if any of the three prongs is satisfied, the government will be liable for attorney's fees and costs. *United States v. Sherburne*, 249 F.3d 1121, 1126 (9th Cir.2001). We therefore analyze each prong in turn.

*Vexatious*

In order for the position of the government to be vexatious there must be both a subjective element of maliciousness or intent to harass, and an objective element of deficiency. *United States v. Sherburne*, 249 F.3d 1121, 1126–27 (9th Cir. 2001). Faulty judgment alone will not support Hyde Amendment liability. *United States v. Tucor Int'l*, 238 F.3d 1171, 1180 (9th Cir.2001).

The defendants argue that the government was subjectively malicious in the commencement of the action and after the case was filed.

*Pre–Indictment*

The defendants argue that the following evidence supports the subjective element of malice, or intent to harass prior to the filing of the lawsuit: (1) the government's case was initiated when Barbara Darrow, a woman with a known vendetta against Mr. Stephens, contacted the United States Department of Agriculture Office of the Inspector General ("USDA/OIG"); (2) the first investigation revealed no violations on the part of the defendants; (3) upon learning of the OIG result, Ms. Darrow contacted AUSA Johnson who, notwithstanding the OIG investigation, asked the FBI to do another investigation and continued on with the case. The defendants argue that this evidence demonstrates that the government's case was flawed from the start, because it was based on pursuit of a vendetta.

The government must be shielded from liability because an indictment was eventually returned by the grand jury, an independent body. The grand jury acts independently of both the court and the prosecution. *United States v. Hogan*, 712 F.2d 757, 759 (2d Cir.1983). In this independent role the grand jury serves as an "accuser sworn to investigate and present for trial persons suspected of wrongdoing" and "a shield standing between the accuser and the accused, protecting the individual citizen against oppressive and unfounded government prosecution." *Id.* The intervention of the grand jury gave the government a reasonable belief that there was merit to the case. *See e.g. Bontkowski v. United States*, 28 F.3d 36, 37 (7th Cir. 1994) (stating that a grand jury indictment is prima facie evidence of probable cause); *White v. Frank*, 855 F.2d 956, 961 (2d Cir.1988) (stating that indictment by a grand jury creates a presumption of probable cause); *Politte v. United States*, 852 F.2d 924, 929 (7th Cir.1988) ("When a grand jury indictment has been returned against any defendant there is a strong presumption that the charge is brought in good faith.").

The defendants argue that the indictment was not made by an impartial grand jury because the government presented false and misleading testimony to the grand jury in order to secure an indictment against defendants.

The role of the grand jury is to determine whether a crime has been committed. *United States v. R. Enterprises*

*Inc.,* 498 U.S. 292, 111 S.Ct. 722, 726, 112 L.Ed.2d 795 (1991). The grand jury need only hear the prosecutor's side to make its determination as to whether an adequate basis exists for bringing a criminal charge, and the prosecution has no duty to present evidence to the grand jury that is exculpatory and favorable to the accused. *United States v. Williams,* 504 U.S. 36, 50–56, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992).

■ In our case the government presented the evidence to the grand jury in the light most favorable to their position. The government may not have informed the grand jury about the possible explanations for the farming operations, the alternative definitions of "shell corporation" or any of the other evidence that defendants say proved their innocence. However, the prosecution did not need to do so. *See United States v. Gilbert,* 198 F.3d 1293, 1305 (11th Cir.1999) (stating that "failing to disclose to the grand jury exculpatory evidence is not a basis for concluding that the government's position in an underlying prosecution was 'vexatious, frivolous, or in bad faith' ..."). *See also United States v. Samango,* 607 F.2d 877, 880 n. 6 (9th Cir.1979) (stating that "An indictment cannot be challenged on the ground that the evidence before the grand jury was incompetent or inadequate").

■ The defendants also say that the prosecution presented false evidence to the grand jury in order to secure an indictment. We have reviewed the evidence and conclude that there is no evidence to indicate that the government's testimony and evidence before the grand jury was false. The majority of the arguments presented by the defendants go to the weight and interpretations of the evidence, instead of demonstrating actual false statements made by the government. In addition, many of the arguably false statements appear to be about information that is not material to the case. The Ninth Circuit appears to focus on the materiality of statements when analyzing whether there has been government misconduct that warrants sanctions. *See United States v. Kennedy,* 564 F.2d 1329, 1338 (9th Cir.1977) (holding that in the situation of a possible dismissal of an indictment because of possible grand jury tampering "... only where knowing perjury relating to a material matter has been presented to the grand jury should the trial judge dismiss an otherwise valid indictment....")

### Post–Indictment

The second argument focus on the actions of the government after the case was filed. The defendants present the following claims to support an improper subjective element after the case began: (1) the government misled the court and the defendants when they repeatedly represented that they would not request a stop in payment from the FSA, and then at trial, Ms. Plummer testified that a request to stop farm subsidy payments to defendants had been mailed; (2) the fact that the government withdrew from the parallel qui tam case, but reserved the right to intervene at any time, and indicated that it would pursue administrative remedies against the defendants; (3) the closing argument made by Mr. Johnson including the vilification of Mr. Stephens family and Mr. Dailey, and the chart about the Manchester partners.

■ The court addressed the issue of the government's request to stop farm subsidy payments to defendants in an instruction to the jury. Our instruction indicated that the jurors could take the government's representations that they would not ask to have payments stopped, and their actions in requesting to have the payments stopped into account in assessing the credibility of the government. The government's position in a parallel action

does not influence our analysis here. We have reviewed the transcript of the closing argument, and do not agree that the government prosecutors "vilified" Mr. Stephens and his family. We find that these claims do not support the subjective requirement of a vexatious prosecution.

■ The defendants argue that the following claims support the objective element of deficiency: (1) the government does not understand the farm regulations at issue, and continues to misapply them; (2) all of the testimony indicated that there were no violations of farm program regulations; (3) there were never any problems in any of the end of the year reviews conducted by the FSA; and (4) the government continued to make all of the payments under the farm program to the defendants.

However, from the start the government's case was built on reasonable inferences that could be made from the situations, rather than demonstrative evidence. The government argued that although Mr. Stephens did not control the corporations on paper, and in representations to the FSA, he nevertheless had real control over them, and used them to circumvent farm payment limitations. The government had a tough case to prove, but we found that reasonable inferences could have been made by the jury that Mr. Stephens did have ultimate control over the corporations and the partnership, even though no regulations had been violated.

In sum, we find that the problematic actions on the part of the government were done more out of inattention to the case, rather than a subjective intent of malice, or an objective deficiency in the underlying case. We therefore deny attorney's fees based on the vexatious prong of the Hyde Amendment.

*Frivolous*

■ The government's position is frivolous when it is groundless, with little prospect of success, often brought only to embarrass or annoy the defendant. *United States v. Gilbert,* 198 F.3d 1293, 1299 (11th Cir.1999).

■ The strongest argument from the evidence can be made that the government's position in this case was frivolous. The government's case had limited prospect of success. The strongest demonstrative evidence to support its position was the information contained in the bank documents that indicated Mr. Stephens had claimed ownership of the corporations, and the partnership. The majority of the demonstrative evidence indicated that defendants had done nothing wrong.

Although not dispositive, the fact that we denied the defendant's rule 29(a) motions, and permitted the case to go to the jury on counts I and II indicate that the case was not frivolous. After hearing all of the government's evidence we felt that the jury could disregard the testimony of Mr. Daily and believe that Mr. Stephens had something to do with the indications of ownership in the bank records. We also felt that the government had presented enough evidence that would support a reasonable juror's conclusion that Mr. Stephens controlled the corporations, and the partnership. This contention was strongly countered by the cross-examination by defense counsel, and in the end, the jury decided not to draw any inferences in favor of the government. The government did not have that much to go on in this case, but pursuing the case was not frivolous.

*Bad Faith*

■ An action brought in bad faith is one where there is a conscious doing of a wrong, the term bad faith contemplates a state of mind operating with "furtive design or ill will." *United States v. Gilbert,* 198 F.3d 1293, 1299 (11th Cir.1999).

There is no evidence to demonstrate that the government's actions were taken in bad faith. The impropriety of the government's actions appear to be motivated more from lack of care to the case than a conscious desire to harm the defendants. The evidence presents a picture of questionable prosecution, but not one where there is a state of mind of ill will, nor of a furtive design.

Our conclusion should in no way be construed to mean that the court sanctions the behavior of the government in this case.

The United States Attorney's office in Montana should be on notice that the kind of behavior exhibited by the government in this case is very troublesome. The government's misrepresentation to the court and the defendants concerning the continuation of payments for the farm program was a serious error, bordering on misconduct. The government's failure to comply with repeated court orders for discovery indicates a lack of respect for orders of the court.

But in conclusion, we find that although there were many problems with the government's presentation of this case, the position of the government in bringing the case was not "vexatious, frivolous, or in bad faith."

*IT IS, THEREFORE, HEREBY OR-DERED THAT,* the motions for attorney's fees (# 292), (# 285), and (# 288) pursuant to the Hyde Amendment are *DENIED.*