**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Erik LINDBERG, Defendant–**
**Appellant.**

**No. 99–10371.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 16, 2000

Filed: July 27, 2000

William A. Cohan (argued), William A. Cohan, P.C., San Diego, California, and Donald W. MacPherson, The MacPherson Group, Phoenix, Arizona, for the defendant-appellant.

Thomas Muehleck, Assistant United States Attorney, Honolulu, Hawaii, for the plaintiff-appellee.

Before: SCHROEDER, HAWKINS, and FISHER, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge:

This case presents issues of first impression in this circuit under the Hyde Amendment, which allows a court to award litigation expenses to a prevailing criminal defendant where the government's position was vexatious, frivolous, or in bad faith, *see* 18 U.S.C. § 3006A (historical and statutory notes). We hold that in order to recover expenses, a defendant must show more than that the government's position was not "substantially justified," the standard for recovering costs under the Hyde Amendment's civil counterpart, the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A). We also hold that a district court's ruling on a Hyde Amendment motion is reviewed for abuse of discretion. Applying these two holdings to the facts, we conclude that the district court did not abuse its discretion in denying Erik Lindberg's motion for fees and costs or his request for discovery.

## I. FACTS AND PROCEDURAL BACKGROUND

On January 24, 1996, a grand jury in Hawaii returned an indictment against Lindberg, his mother, several of his siblings, and several of his mother's employees. Count 1 charged the defendants with (1) conspiracy to defraud the government of federal income taxes and (2) conspiracy to structure and assist in structuring currency transactions with domestic financial institutions for the purpose of evading certain reporting requirements, all in violation of 18 U.S.C. § 371. Counts 2 through 32 charged the defendants with the substantive offense of structuring currency transactions to avoid currency transaction reporting requirements, in violation of 31 U.S.C. §§ 5324 and 5322. Count 33 sought forfeiture of real and personal property traceable to the structured currency transactions that were the basis for counts 2 through 32.

The substance of the government's case was as follows: Lindberg's mother, Michelle, owned several "hostess bars" in Honolulu. With the help of her children and employees, she skimmed money from the businesses by not depositing cash receipts. The defendants deposited this money into different bank accounts in amounts under $10,000, so as not to trig-

ger the requirement that banks report cash transactions in excess of that amount.[1] Then, they used the money in these accounts to buy cashier's checks, which they then used to buy real estate. The government alleged that by participating in this scheme, the defendants conspired to defraud the government of income tax, conspired to avoid triggering the currency transaction reporting requirements, and committed the substantive offense of structuring transactions to avoid triggering the reporting requirements.

Lindberg was 17 years old when the alleged conspiracy began in 1988 and 21 when it ended in 1992. The evidence at trial showed that he worked at one of his mother's bars, Club Magazine Girl, in the fall of 1988 and in the spring and summer of 1989. It also showed that in January 1989, he opened two bank accounts, one at Bank of Hawaii, the other at Central Pacific Bank. On January 9 and 11, $8,000 cash was deposited into his Bank of Hawaii account. On January 13, $7,000 cash was deposited into his Central Pacific Bank account. And on January 18, $8,000 cash was deposited into one account, and $7,000 was deposited into the other. The evidence failed to establish who deposited the money: A defense expert testified that the handwriting on the deposit slips did not match Lindberg's, while the government speculated that a teller had filled out the slips for him.

On January 26, Lindberg used the money in his Bank of Hawaii account to buy a cashier's check for $24,000 and the money in his Central Pacific Bank account to buy another cashier's check for $20,000. Because the transactions did not involve cash, they did not trigger the banks' currency transaction reporting requirements. On January 27, Lindberg used the cashier's checks to pay part of the purchase price for an apartment. Although the defense produced evidence that Lindberg's sister Lien was identified as the "purchaser," the apartment was titled in Lindberg's name.

The apartment was also listed by the government as one of the properties it sought to obtain under the forfeiture count.

Lindberg's trial began on March 19, 1997. On April 10, 1997, the government dismissed Lindberg from counts 2 through 32, which involved the substantive offense of structuring and which served as the basis for the forfeiture count. On April 22, 1997, the district court denied Lindberg's motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. Two weeks later, the jury found Lindberg guilty of count 1, the conspiracy charge. Although the jury did not return a verdict on the forfeiture count (because it was premised on counts 2 through 32), the district court entered a judgment of guilty on that count.

Lindberg raised two arguments on appeal from this conviction. First, he claimed the district court erred by entering a judgment of guilty on the forfeiture count. The government agreed, and a panel of this court reversed the judgment. Second, he claimed the evidence was insufficient to convict him on either prong of the conspiracy count. Again, the panel agreed. In a memorandum disposition filed March 29, 1999, the panel noted that in order to be guilty of conspiring to defraud the government of income tax, a defendant must have knowledge that tax evasion is the object of the conspiracy. *See United States v. Skelton,* 176 F.3d 486, 1999 WL 184572 at *3 (9th Cir.1999) (citing *United States v. Krasovich,* 819 F.2d 253, 254 (9th Cir.1987)). It also noted that in order to be guilty of structuring currency transactions so as not to trigger the banks' reporting requirements, a defendant must not only know that banks have a duty to report cash transactions over $10,000, but must know that it is illegal to attempt to avoid triggering that requirement. *See id.* 1999 WL 184572 at *1 (citing *Ratzlaf v. United States,* 510 U.S. 135, 149, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994)).[2]

---

**1.** This requirement is imposed by 31 U.S.C. § 5313 and 31 CFR § 103.22(a).

**2.** *Ratzlaf* has been superseded by statute, *see United States v. Ahmad,* 213 F.3d 805, 809

The panel then concluded that although Lindberg participated in the tax evasion conspiracy, there was no evidence that "he did so with the knowledge that tax evasion—personal or corporate—was an object of the conspiracy." *Id.* 1999 WL 184572 at *4. It also found that although there was evidence that Lindberg participated in the structuring, there was no evidence that he knew structuring, was illegal. *See id.* 1999 WL 184572 at *5. Therefore, the panel reversed his conviction.[3]

Shortly afterward, Lindberg filed a motion for costs and fees pursuant to the Hyde Amendment, alleging that the government's prosecution of him was vexatious, frivolous, or in bad faith. He argued that the government should have known there was insufficient evidence to convict him and that it persisted in the prosecution to gain plea bargain leverage against his mother and to obtain his apartment by forfeiture. In order to develop this allegation, he asked the district court to order discovery, including depositions of IRS agents and the production of investigative documents.

The district court denied Lindberg's motion and his request for discovery. Although the Ninth Circuit panel had concluded that the evidence was insufficient to convict him, the district court noted that the evidence was sufficient for the grand jury to indict, for the district court to deny a motion for acquittal, and for the jury to convict. The court also concluded that because Lindberg's allegations focused on the government's lack of evidence, there was no need to order the production of documents that were not introduced as evidence at trial.

Lindberg timely appealed the district court's denial. He argues that the district court erred by concluding that the government's prosecution was not vexatious, frivolous, or in bad faith and that it erred by denying his request for discovery. We have jurisdiction under 28 U.S.C. § 1291.

## II. STANDARD OF REVIEW

The issue of what standard of review to apply to appeals under the Hyde Amendment is one of first impression in this circuit. Several other circuits have addressed the issue, however, and their decisions provide some guidance.

In *United States v. Gilbert*, 198 F.3d 1293 (11th Cir.1999), the Eleventh Circuit noted that under the Hyde Amendment, an award of attorney's fees "'shall be granted pursuant to the procedures and limitations (but not the burden of proof) provided for an award under the [Equal Access to Justice Act].'" *Id.* at 1297–98 (quoting 18 U.S.C. § 3006A) (alteration in original). The court then noted that a denial of attorney's fees under the Equal Access to Justice Act (EAJA)[4] is reviewed for abuse of discretion. Therefore, the court held, a denial of fees under the Hyde Amendment also should be reviewed for abuse of discretion. *See id.* The Fourth Circuit adopted the Eleventh Circuit's conclusion without explanation in *In re 1997 Grand Jury*, 215 F.3d 430, 436 (4th Cir. 2000).

The Fifth Circuit reached the same result in *United States v. Truesdale*, 211 F.3d 898 (5th Cir.2000), but for slightly different reasons. The court acknowledged that awards under the Hyde

---

(4th Cir.2000), but it was applicable in this case.

**3.** The panel also reversed the structuring convictions against Michelle Lindberg and Robert Skelton, one of her employees. But it upheld the conspiracy convictions against them, concluding that the evidence was sufficient to show that they knew tax evasion was the object of the conspiracy. *See Skelton*, 176 F.3d 486, 1999 WL 184572 at *4. The panel also upheld Michelle's conviction for willfully

filing false tax returns in violation of 26 U.S.C. § 7206(1). *See id.*, 1999 WL 184572 at *2.

**4.** The EAJA allows prevailing defendants in civil cases brought by the United States to recover fees and other expenses "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

Amendment "shall be granted pursuant to the procedures and limitations provided for an award under the [EAJA]," but concluded that the proper standard of review is not one of the "procedures and limitations" of the EAJA. *See id.* at 905. Nevertheless, the court held that rulings under the Hyde Amendment should be reviewed for abuse of discretion because district courts are well situated to evaluate the government's case and need flexibility to develop a workable standard for what constitutes a vexatious, frivolous, or bad faith position. *See id.* at 906. The court also found that the Amendment's language contemplates a degree of deference to the district court. *See id.*[5]

We find the Fifth Circuit's analysis persuasive, particularly its emphasis on the district court's familiarity with the case. A district court hears the evidence from the beginning and is in a better position than this court to distinguish between a good faith prosecution that is thin on evidence and a prosecution that is so lacking in support it can only be vexatious, frivolous, or in bad faith. Accordingly, we will review the district court's denial of Lindberg's motion for abuse of discretion. Under this standard, we will not reverse unless we have a firm conviction that the district court committed a clear error of judgment. *See United States v. Chon,* 210 F.3d 990, 994 (9th Cir.2000).

### III. ANALYSIS

#### A. *Motion for fees and expenses*

The Hyde Amendment was enacted as part of a 1997 appropriations bill and is found as a statutory note to 18 U.S.C. § 3006A. It provides that in any criminal case, the court

> may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation ex-

penses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust. Such awards shall be granted pursuant to the procedures and limitations (but not the burden of proof) provided for an award under section 2412 of title 28, United States Code [the EAJA]. . . .

18 U.S.C. § 3006A.

As a preliminary matter, we note that a defendant bears the burden of proving that the government's position was vexatious, frivolous, or in bad faith. The Amendment states that awards "shall be granted pursuant to the procedures and limitations (but not the burden of proof) provided for an award under [the EAJA]." Under the EAJA, the government bears the burden of proof. *See Meinhold v. United States Dep't of Defense,* 123 F.3d 1275, 1277 (9th Cir.1997). Thus, by rejecting the EAJA's approach to burden of proof, the Hyde Amendment places the burden of proof on the movant. *See In re 1997 Grand Jury,* 215 F.3d at 436; *Truesdale,* 211 F.3d at 908; *Gilbert,* 198 F.3d at 1304.

We also note that the standard for recovering fees under the Hyde Amendment is more demanding than under the EAJA. Lindberg argues that in order to prevail, he only has to show that the government's position was not "substantially justified," the standard for recovery under the EAJA. However, legislative history undermines his claim. When Representative Hyde first introduced the Amendment, it contained the same language as the EAJA. *See* 143 Cong. Rec. H7786–04, H7791 (daily ed. Sept. 24, 1997). But several legislators criticized the "substantially justified" standard as too relaxed, *see id.* at

---

5. The Amendment provides that a court may award litigation expenses to a criminal defendant "where *the court finds* that the position of the United States was vexatious, frivolous, or in bad faith. . . ." 18 U.S.C. § 3006A (emphasis added). In *Pierce v. Underwood,* 487

U.S. 552, 559, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), the Supreme Court relied on similar language in the EAJA as evidence that Congress had given the district courts discretion to determine whether an award of expenses was justified.

H7792; *Gilbert,* 198 F.3d at 1300–02, and when the final version was passed, it provided that a criminal defendant could only recover fees and expenses if the government's position was vexatious, frivolous, or in bad faith. This clearly illustrates that a defendant must show more than that the government's position was not substantially justified. *See Truesdale,* 211 F.3d at 907–08; *Gilbert,* 198 F.3d at 1302.

Several courts have grappled with the issue of what exactly a defendant must show under the vexatious, frivolous, or in bad faith standard. The Eleventh and Fourth Circuits have relied on Black's Dictionary to illuminate these terms. *See In re 1997 Grand Jury,* 215 F.3d at 436; *Gilbert,* 198 F.3d at 1298–99. At least one district court has followed suit. *See United States v. Reyes,* 16 F.Supp.2d 759, 761 (S.D.Texas 1998). Although this approach seems sensible enough, we find it unnecessary to settle on a precise formula here because under any articulation of the standard, we would be hard-pressed to conclude that the district court abused its discretion.

■ Lindberg argues that the government's prosecution of him was vexatious and frivolous because it lacked any evidence that he knew it was illegal to structure currency transactions or that he knew the object of the conspiracy was tax evasion. Because such knowledge is required before a defendant can be found guilty, *see Ratzlaf,* 510 U.S. at 149, 114 S.Ct. 655; *Krasovich,* 819 F.2d at 254, Lindberg argues that the government knew its case against him was baseless.

Although Lindberg is correct that he could not be convicted of conspiracy unless he had the requisite knowledge, the prosecution was not required to present direct evidence of Lindberg's knowledge. In *Ratzlaf,* the Supreme Court stated that "[a] jury may, of course, find the requisite knowledge on defendant's part by drawing reasonable inferences from the evidence of defendant's conduct." 510 U.S. at 149 n. 19, 114 S.Ct. 655. Thus, the government's lack of direct evidence as to Lindberg's

knowledge does not demonstrate that its case was baseless. A jury could have inferred that knowledge on the basis of Lindberg's conduct.

■ Indeed, that appears to be what the jury did. The jury convicted Lindberg on the evidence presented by the government, and the district court refused to grant Lindberg's motion for acquittal. It is true that this court subsequently reversed the conviction. But as several courts have stated, a defendant must prove more than that his conviction was reversed on appeal; otherwise, almost every reversal would result in an award of attorney's fees. *See Gilbert,* 198 F.3d at 1299; *Reyes,* 16 F.Supp.2d at 760; *United States v. Troisi,* 13 F.Supp.2d 595, 596 (N.D.W.Va.1998).

The district court, which also presided over the trial in this case, concluded during its consideration of Lindberg's Hyde Amendment claim that "there [was] no question in [its] view that there was evidence by which a jury could draw inferences." We find no reason to second-guess the court's firm conviction that the charges in this case were neither vexatious nor frivolous.

■ Lindberg also argues that the government's prosecution of him was in bad faith because it was motivated by a desire to gain plea-bargain leverage against his mother and to obtain his apartment through forfeiture. To support this claim, he cites various statements made by the prosecution during trial. But these statements simply reflect the government's spin on the evidence; they do not indicate bad faith. At one point, for instance, the prosecutor urged the jury not to compartmentalize the evidence, but to look at each defendant's association with the group. Contrary to Lindberg's claim, this statement does not demonstrate that the prosecutor knew the case against Lindberg was baseless. Under our case law, once the existence of a conspiracy is established, evidence showing that a defendant was

even slightly connected with the conspiracy is sufficient for a conviction. *See United States v. Boone,* 951 F.2d 1526, 1543 (9th Cir.1991). Thus, it was only natural for the prosecutor to focus on each defendant's association with the conspiracy.

B. *Request for discovery*

The Hyde Amendment provides that

[t]o determine whether or not to award fees and costs under this section, the court, for good cause shown, may receive evidence ex parte and in camera (which shall include the submission of classified evidence or evidence that reveals or might reveal the identity of an informant or undercover agent or matters occurring before a grand jury) and evidence or testimony so received shall be kept under seal. . . .

18 U.S.C. § 3006A.

Lindberg argues that because the Hyde Amendment allows the court to receive evidence "ex parte and in camera," his request for discovery should be granted. He argues that the production of investigative documents would demonstrate that the government knew it had insufficient evidence to convict him and that it persisted in the prosecution solely to gain plea bargain leverage against his mother and to obtain his apartment by forfeiture.

The district court denied Lindberg's request because it found that his claims centered on the government's lack of proof. We agree. Lindberg has failed to point to any evidence that the government was motivated by improper considerations. His motion for fees and expenses rests entirely on his assertion that the government lacked sufficient evidence to convict him of conspiracy. As we have already noted, however, such an assertion is not enough to show that the government's position was vexatious, frivolous, or in bad faith. The Hyde Amendment allows the district court to order the production of documents "for good cause shown." The district court did not abuse its discretion in finding that Lindberg had failed to show good cause.

AFFIRMED.