**UNITED STATES of America, Plaintiff–Appellee,**

v.

**MANCHESTER FARMING PARTNERSHIP, Defendant–Appellant.**

**United States of America, Plaintiff–Appellee,**

v.

**Lone Pine Land, Inc., Defendant– Appellant.**

**United States of America, Plaintiff–Appellee,**

v.

**Priest Butte Farm, Inc., Defendant– Appellant.**

Nos. 01–30414, 01–30415, 01–30416.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 2002.

Filed Jan. 10, 2003.

---

Kenneth R. Olson, Great Falls, Montana, for defendant-appellant Manchester Farming Partnership.

Floyd D. Corder, Corder & Allen, Great Falls, Montana, for defendant-appellant Lone Pine Land, Inc.

Daniel Donovan, Thompson, Potts & Donovan, P.C., Great Falls, Montana, for defendant-appellant Priest Butte Farm, Inc.

William W. Mercer, United States Attorney, District of Montana, for plaintiff-appellee.

Carl E. Rostad, Assistant U.S. Attorney, District of Montana, for plaintiff-appellee.

Leif M. Johnson, Assistant U.S. Attorney, District of Montana, for plaintiff-appellee.

John A. Drennan, Department of Justice, Washington, DC, for plaintiff-appellee.

Before TROTT, T.G. NELSON, and THOMAS, Circuit Judges.

## OPINION

T.G. NELSON, Circuit Judge.

Manchester Farming Partnership ("Manchester"), Lone Pine Land, Inc. ("Lone Pine"), and Priest Butte Farm, Inc. ("Priest Butte"), (together, "Appellants") appeal the district court's denial of attorney fees and costs pursuant to 18 U.S.C. § 3006A (the "Hyde Amendment"). Appellants argue that the Government's conduct before and during the trial was vexatious, frivolous, and in bad faith; thus the district court erred when it denied their Hyde Amendment request for attorney fees and costs. We hold that the district court did not abuse its discretion; therefore, we affirm.

## I. BACKGROUND

Robert Stephens formed each of the three entities that constitute the Appellants in this matter. Stephens, an individual farmer in Montana, incorporated both Priest Butte and Lone Pine in 1987. Stephens, with one other shareholder for each company, owns an equal 50% ownership interest in both corporations. In 1991, Stephens formed Manchester with four equal partners.

Stephens successfully defeated an unrelated civil claim brought by Gary Schumacher in 1994. Subsequent to Stephens' successful defense in this 1994 suit, Schumacher's wife, Barbara Darrow, provided the Department of Agriculture Office of the Inspector General ("OIG") with a tip that Stephens was operating his farms unlawfully. As a result, OIG conducted an investigation. However, OIG terminated the investigation because it did not find any regulation violations, and it notified Darrow that it would take no further action. Darrow then contacted the Assistant United States Attorney ("AUSA"), who began a second investigation, looking into possible criminal charges against Stephens and Appellants.

Meanwhile, Schumacher filed a *qui tam* action alleging that Stephens defrauded Government agencies; the Government intervened in this action. Soon thereafter, the Government also brought criminal charges against Stephens and Appellants.

The charges were based on farm program payments the Government made to Stephens and Appellants.

Farm program payments are limited to individuals and up to two separate entities. However, to qualify for the payments, each farming operation must have separate interests in the crop or land, separate responsibilities, and separate costs of farming. The indictment against Stephens and Appellants alleged that Stephens formed Appellants as "shell entities" in order to receive additional farm program payments unlawfully. At the heart of the Government's case was its contention that Stephens was the sole owner of Appellants and that his partners and co-shareholders did not hold any real ownership interest. Ultimately, a jury acquitted Stephens and Appellants of all criminal charges.

Following acquittal, Appellants moved to recover fees and costs associated with their defense pursuant to the Hyde Amendment. The district court denied their request, finding that the Government's litigation position was not vexatious, frivolous, or in bad faith. On appeal, Appellants made thirteen arguments that the district court erred when it found that the Government's position was not vexatious, frivolous, or in bad faith. According to Appellants, the Government:

 (1) acted wrongfully when it brought the indictment;

 (2) pursued a wrongful claim when it investigated possible criminal charges;

 (3) presented false and distorted testimony to the grand jury;

 (4) joined the *qui tam* action after it said it had no intention of joining the litigation;

 (5) falsely characterized Appellants as "shell" companies;

 (6) failed to negotiate a settlement in good faith;

 (7) disobeyed the district court's order regarding trial exhibits;

 (8) misled the district court and Appellants when it said it would not terminate Appellants' farm payments;

 (9) falsely stated in the indictment that Stephens made insurance payments on behalf of Manchester before the partnership was formed;

 (10) wrongfully ignored exculpatory evidence when it presented its case to the grand jury;

 (11) presented the jury with erroneous and misleading summary charts;

 (12) told the jury in its closing arguments that if they don't return a verdict for the Government, it would lose a lot of money; and

 (13) pursued a frivolous and unfounded case.[1]

## II. STANDARD OF REVIEW AND JURISDICTION

▬▬▬ We review a district court's denial of a Hyde Amendment motion for abuse of discretion.[2] An abuse of discretion is an error of law or a determination based on a clearly erroneous finding of fact.[3] Reversal is warranted only if we find with "a firm conviction that the district court committed a clear error of judgment."[4]

---

**1.** Because Appellants make a general allegation that the above Government actions were frivolous, vexatious, or in bad faith, we have applied the Hyde Amendment elements as we see that they best fit the Government's conduct. To the extent that Appellants' arguments overlap, we have combined them into one discussion.

**2.** *United States v. Lindberg,* 220 F.3d 1120, 1124 (9th Cir.2000) (stating that "we will not reverse unless we have a firm conviction that the district court committed a clear error of judgment").

**3.** *United States v. Sherburne,* 249 F.3d 1121, 1125 (9th Cir.2001).

**4.** *Id.* (quoting *Lindberg,* 220 F.3d at 1124).

We have jurisdiction over the district court's denial of Appellants' Hyde Amendment motion pursuant to 28 U.S.C. § 1291.

## III. REQUESTING FEES AND COSTS PURSUANT TO THE HYDE AMENDMENT

### A. *The Hyde Amendment*

 We must devote a brief discussion to the application of the Hyde Amendment before we delve into Appellants' arguments for recovering fees and costs. The Hyde Amendment was enacted as a method through which to sanction the Government for "prosecutorial misconduct."[5] It provides in relevant part:

[T]he court, in any criminal case ... may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless pursuant to the procedures and limitations (but not the burden of proof) provided for an award under section 2412 of title 28, United States Code.[6]

Modeled after the Equal Access to Justice Act ("EAJA"), the Hyde Amendment has a more demanding burden of proof than the EAJA.[7] Under the EAJA, a defendant will prevail unless the Government can prove its position was substantially justified.[8] However, recovering attorney fees and costs under the Hyde Amendment requires a stronger showing.[9] Under the Hyde Amendment, the burden is on the defendant in the underlying case to prove the Government's position was vexatious, frivolous, or in bad faith.[10] The elements are disjunctive; thus, the defendant need only prove one of the three elements to recover.[11] The Hyde Amendment does not define the terms "vexatious," "frivolous," or "bad faith." We have, however, already defined two of the terms: vexatious and frivolous.

### B. *"Vexatious Conduct"*

 Appellants may recover fees and costs if they can prove that any of the Government's actions were vexatious. Appellants have ultimately failed to satisfy their burden of proof. "Vexatious" has both a subjective and objective element: subjectively, the Government must have acted maliciously or with an intent to harass Appellants; objectively, the suit must be deficient or without merit.[12] To prove vexatiousness, the defendant must show the Government had some "ill intent."[13]

 Appellants have failed to prove the subjective element of vexatiousness. Nothing in the record suggests that the Government was intentionally malicious or harassing toward Appellants. The fact that the Government pursued an investigation based on a vengeful tipster is not dispositive. Tipsters, by their nature, often hold grudges against the reported parties. It does not follow that the Govern-

---

**5.** *See United States v. Braunstein,* 281 F.3d 982, 995 (9th Cir.2002) (citing *United States v. Gilbert,* 198 F.3d 1293, 1304 (11th Cir.1999)) (internal quotation marks omitted).

**6.** 18 U.S.C. § 3006A (2001) (amended 1998).

**7.** *Lindberg,* 220 F.3d at 1124.

**8.** *Id.*

**9.** *Id.; see also Sherburne,* 249 F.3d at 1127(stating that "the Hyde Amendment [test]

should not be an exercise in 20/20 hindsight based solely on reasonableness," but rather should account for the fluidity of the trial process).

**10.** *Lindberg,* 220 F.3d at 1125.

**11.** *Id.* at 1299.

**12.** *Sherburne,* 249 F.3d at 1126–27 (quoting *Gilbert,* 198 F.3d at 1299).

**13.** *Id.* at 1127 n. 5.

ment harassed, acted maliciously, or with an "ill intent" simply because it followed up on such a tip.

As for the objective element, the district court found that the Government's position had sufficient merit to submit the case to a jury. The district court did note that the Government acted with "deliberate indifference" in pursuing this investigation. On this, we agree; clearly the Government's performance was significantly below desirable standards. However, we cannot say that the district court abused its discretion when it concluded that the poor performance in this case did not rise to the level of vexatiousness under the Hyde Amendment.

 Appellants also claim that the Government presented the jury with erroneous and misleading summary charts. We disagree. The record shows that the Government's charts were, at most, presented in a light most favorable to its position.[14] Appellants do not claim that the charts were patently false, only that they were not as complete as Appellants would have liked them. The district court did not abuse its discretion in finding that the Government did not act vexatiously.[15]

### C. Pursuit of a "Frivolous Case"

If Appellants could satisfy their burden to show that the Government pursued a frivolous case, they would recover fees and costs pursuant to the Hyde Amendment. However, the district court did not abuse its discretion in concluding that they had failed to satisfy their burden of proof under this element as well.

 A "frivolous" case is one that is "groundless . . . with little prospect of success; often brought to embarrass or annoy the defendant."[16] The case is frivolous when "the government's position was foreclosed by binding precedent or so obviously wrong as to be frivolous."[17]

Appellants argue that the Government knew its case was groundless because its investigation did not reveal any regulatory violations. They claim that the Farm Service Agency's ("FSA") annual approval of farm program payments proved that they were in compliance with the relevant law. Additionally, they contend that the Government presented false and distorted testimony to the grand jury in order to obtain an indictment.

As disturbing as these allegations may be, the record does not support the contention that the Government presented false information to the grand jury, that the Government's position was foreclosed by binding precedent, that the Government was aware that its position was groundless, or that it brought the case in order to harass Appellants.

---

**14.** *See Lindberg,* 220 F.3d at 1125 (stating that the Government is entitled to present evidence with a "spin" and that doing so does not rise to the level required for recovering fees and costs under the Hyde Amendment).

**15.** Appellants claim that the Government's closing arguments constituted prosecutorial misconduct when the Government said that it would lose a lot of money unless the jury returned a verdict against Appellants. Sustaining Appellants' objection, the district court instructed the jury to ignore the Government's remark. Courts often use curative instructions to remedy the type of improper comment the Government made. *See United States v. Endicott,* 803 F.2d 506, 513 (9th Cir.1986) (holding that a district court can cure the effect of an "improper prosecutorial comment[ ]" with a jury instruction). Nothing in the record suggests that the Government made the statements maliciously or with an intent to harass Appellants.

**16.** *Braunstein,* 281 F.3d at 995 (quoting *Gilbert,* 198 F.3d at 1299) (internal quotation marks omitted).

**17.** *Id.* (quoting *Gilbert,* 198 F.3d at 1304) (internal quotation marks omitted).

 The district court did make one disturbing finding: that because the grand jury indicted Appellants, the Government's case was not frivolous. This finding does not hold water. First, Appellants contend that the Government presented false and distorted evidence at the grand jury proceeding. Assuming this were true, false information could sway a grand jury to indict, even though the Government may be aware that the true facts are insufficient to support an indictment, thus making it a frivolous case. Additionally, under the district court's reasoning, the Government would be protected from a frivolous finding anytime it was able to obtain an indictment. This test goes against the policy reasons behind the Hyde Amendment—to protect defendants from outlandish Government prosecutorial misconduct.[18] Therefore, we decline to adopt the district court's conclusion that the case is not frivolous because of the grand jury's indictment.

 However, the district court relied on additional grounds to find that the Government's case was not frivolous. With the facts presented at trial, the district court believed the jury could reasonably infer that Stephens "did have ultimate control over the corporations and the partnership, *even though no regulations had been violated.*" Therefore, even absent a regulatory violation, the jury could have convicted Appellants of the criminal charges. Furthermore, the district court also relied on its own denial of Appellants' Rule 29

motion, suggesting that the district court believed there was a sufficient question to present to the jury.

Although the Government's case was not strong, no evidence in the record suggests that the Government's position was brought to embarrass or annoy Appellants.[19] In fact, the record shows that there was a question of whether Stephens' partners and co-shareholders held a true ownership interest. For example, Stephens incorporated Priest Butte with a farm hand who contributed no money to the corporation, continued to work as a farm hand, and took no part in the administration of the corporation. The co-shareholder did not receive dividends or any other type of distributions. In fact, he received the same salary that he had before Priest Butte was incorporated. Stephens, as lessor of the farmland, took nearly all of the profits as varying amounts of lease payments. From this evidence, a jury could have found that Stephens was the sole owner of Priest Butte and that the entity was merely a "shell corporation." On this point, we find no reason to question the district court's findings.

Appellants do not cite any law to support their argument that the Government was barred from pursuing criminal charges just because it could not locate a regulatory violation or because the FSA annually approved the payments. That the Government was unable to find a regulatory violation does not prove that Stephens was not the sole owner of Appel-

---

**18.** See *Gilbert,* 198 F.3d at 1298–1303 (providing a summary of the detailed legislative history). *Gilbert* reveals that the Hyde Amendment was enacted to provide successful defendants a remedy when the Government acted to ruin their reputations or to bankrupt them through years of wrongful prosecutions. *Id.* at 1299. Furthermore, concerns about the Hyde Amendment's reach also resulted in Congress giving the district court discretion not to award fees, even when

it found that the Government's position was vexatious, frivolous or in bad faith, "if the court finds that special circumstances make such an award unjust." *Id.* at 1302(internal quotation marks omitted).

**19.** See *Lindberg,* 220 F.3d at 1125(holding that "the government's lack of direct evidence as to [defendant's] knowledge does not demonstrate that its case was baseless").

lants. Furthermore, it does not follow that successfully defrauding the FSA by obtaining approval of annual farm program payments bars the Government from bringing criminal charges either. Therefore, the district court did not abuse its discretion when it concluded that the Government did not pursue a frivolous case.[20]

### D. *"Bad Faith"*

 This circuit has yet to define "bad faith" under the Hyde Amendment. In *United States v. Tucor Int'l, Inc.*,[21] we refused to find bad faith "because the government honestly believed" in its decision to prosecute the defendant.[22] Offering additional guidance, the Eleventh Circuit defined "bad faith" in the same case on which we relied for the definition of "frivolous."[23] In *United States v. Gilbert,* the Eleventh Circuit said "bad faith" "is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will."[24] *Gilbert*'s definition is in line with our previous application of the doctrine; therefore, we adopt the Eleventh Circuit's definition of "bad faith."

In March 2001, the district court asked the Government why it had continued to make farm program payments to Appellants if it believed they were not entitled to receive them. The Government responded that it did not want to suffer liability if Appellants were acquitted. Relying on the Government's assurances, Appellants ar-

gued in their opening statement that the Government had every intention of continuing the farm program payments, despite the fact that it had brought criminal charges against Appellants.

However, in the middle of May 2001, the FSA officially requested that the Government cease all farm program payments. Most notably, the Government's counsel and the AUSA took part in the decision-making process in which the FSA decided to request termination of all farm program payments to Appellants. The Government failed to inform the district court or Appellants of its decision to recommend terminating the farm program payments. It was not until Appellants cross-examined a Government witness that the court learned that the FSA recommended termination of the farm program payments.

When questioned about this situation, the Government said that at the time it told the court and Appellants that it would not discontinue the payments, it was being honest. It was not until the trial date was postponed that the FSA changed its mind. Ultimately, the farm program payments continued throughout the trial.

On this point, the district court cautioned the jury, stating that the Government should have given the court and Appellants notice of its decision to stop the farm program payments and that the jury should not hold this information against Appellants. But, in denying Appellants' request for fees and costs, the district court applied the same *Gilbert* "bad faith"

---

**20.** Appellants also claim that the Government wrongfully ignored exculpatory evidence when it presented its case to the grand jury. This argument is foreclosed by *United States v. Williams*, 504 U.S. 36, 50–55, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992) (holding that the Government is not required to present exculpatory evidence to the grand jury).

**21.** 238 F.3d 1171 (9th Cir.2001).

**22.** *See id.* at 1179.

**23.** *See generally Gilbert,* 198 F.3d 1293; *see also Braunstein,* 281 F.3d at 995 (adopting *Gilbert's* definition of frivolous).

**24.** *Gilbert,* 198 F.3d at 1299(citing Black's Law Dictionary 139 (6th ed. 1999)) (internal quotation marks omitted).

analysis that we adopt today. The district court found that "[t]he impropriety of the government's actions appear to be motivated more from lack of care to the case than a conscious desire to harm the defendants. The evidence presents a picture of questionable prosecution, but not one where there is a state of mind of ill will, nor of a furtive design."

■ While we find the Government's conduct to be less than laudable, we can say neither that the district court's findings were clearly erroneous, nor that it abused its discretion in denying fees. The district court did not abuse its discretion in concluding that the Government's approach to this case, troublesome though it may be, does not rise to the level of "bad faith."[25]

## IV. CONCLUSION

The district court correctly applied the Hyde Amendment elements to Appellants' Hyde Amendment request. Although the Government's performance was embarrassingly below standards, there is insufficient evidence to support a holding that the district court abused its discretion. Accordingly, we affirm.

AFFIRMED.

---

**25.** Appellants also contend that the Government acted in bad faith when it joined the *qui tam* action, although it had stated earlier that it would not join. The fact that the Government later chose to join in the action proves nothing more than that the Government changed its mind.

In addition, Appellants say that the Government's characterization of them as "shell" companies was in bad faith. The district court did not abuse its discretion in rejecting this claim. The issue of whether Appellants were shell companies is at the heart of the Government's case. It has a right to characterize Appellants in a manner that is most favorable to its position. *See Lindberg*, 220 F.3d at 1125(stating that the Government is entitled to present evidence with a "spin," which does not rise to the level required for recovering fees and costs under the Hyde Amendment).

Appellants also suggest that the Government's failure to negotiate a settlement in good faith impliedly means that the Government acted in bad faith. Although the Government originally stipulated to a settlement conference, it withdrew when it concluded that there was no reasonable possibility for settlement. The district court did not abuse its discretion in determining that this did not demonstrate ill will or demonstrate a furtive state of mind.

Finally, Appellants argue that the Government disobeyed the district court's order to place all trial exhibits on a disc, which evidences the Government's "total reckless disregard for the truth if not bad faith in not complying with the valid order of the Court." The district court stated that "[t]he government's failure to comply with repeated court orders for discovery indicates a lack of respect for orders of the court"; however, the government's position was not "vexatious, frivolous, or in bad faith."