### UNITED STATES of America, Plaintiff,

v.

### Norma Sue HOLSTROM, Defendant.

### No. CR–02–0119–JLQ.

United States District Court,
E.D. Washington.

Feb. 26, 2003.

Thomas Owen Rice, U.S. Attorney's Office, Spokane, WA, for U.S.

Douglas Dwight Phelps, Phelps & Assoc., Spokane, WA, for defendant.

## MEMORANDUM OPINION AND ORDER DENYING MOTION FOR ATTORNEY FEES

QUACKENBUSH, Senior District Judge.

This matter came regularly on for hearing by the court on the Defendant's Motion For Attorney Fees (C.R.24) pursuant to 18 U.S.C. § 3006A (the Hyde Amendment), found in the Historical and Statutory Notes. Mrs. Holstrom was represented by Douglas D. Phelps, Esq. The Government was represented by Thomas O. Rice, Assistant United States Attorney.

Mrs. Holstrom seeks the award of her attorney fees and costs incurred in defending this matter after the Plaintiff moved for dismissal of the Indictment and this court dismissed the Indictment with prejudice. The Defendant contends she is entitled to recover her attorney fees pursuant to the Hyde Amendment passed in 1997. That Amendment provides in relevant part:

> [T]he court, in any criminal case...may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court

finds that special circumstances make such an award unjust.

Mrs. Holstrom contends that her prosecution by the Government for alleged arson with intent to commit mail fraud was vexatious, frivolous, and in bad faith after she had been previously charged in Spokane County Superior Court with arson and that charge was dismissed after trial by the court. That court found insufficient evidence to go forward with the trial after the State rested its case. While not challenging on double jeopardy grounds the jurisdiction of the federal court to try the former Defendant on the same facts found insufficient in the Spokane County Superior Court, Mrs. Holstrom, *inter alia*, contends that the decision to so charge her in federal court was one made for frivolous, vexatious, and bad faith reasons.

The Hyde Amendment reads in the disjunctive and a claimant need prove only one of the "vexatious, frivolous, or bad faith" elements in order to prevail. Mrs. Holstrom also argues that the initiation of the federal charges against her after her acquittal on the same facts in state court was in violation of the Department of Justice *Petite* policy limiting successive federal court prosecution on similar facts utilized in a prior state court criminal case. The former Defendant also argues that her federal prosecution was based upon the claimed false and incredible reports and testimony of ATF Agent Lance Hart which Mrs. Holstrom contends the Assistant United States Attorney knew or should have known was unreliable. Agent Hart's role in the prosecutions of Mrs. Holstrom is therefore of primary import.

## FACTUAL BACKGROUND

Mrs. Holstrom's prosecution by the Government arose out of a fire on November 20, 2000 at the Holstrom's rural home where she resided with her husband and children. The home was insured for $89,000 and its contents for $67,000. The Holstroms contend that in fact the home and contents were under insured. There was no evidence that the Holstroms had increased the insurance coverage before the fire. The investigators determined the origin of the fire was on a second floor landing near a portable electric space heater. The matter was investigated by Lt. Tim Archer of Spokane Fire District 8. On November 24, 2000, an anonymous person called the state of Washington Arson Hotline and stated that he had information that the fire was possibly arson. The anonymous caller gave no further information whatsoever and none was subsequently furnished by this person. This anonymous caller furnished no information even suggesting the basis for this "possibility."

Thereafter, Lt. Archer discussed this matter with ATF Agent Hart who was trained and experienced in arson matters. At Agent Hart's suggestion, Lt. Archer made arrangements for Mr. and Mrs. Holstrom to be interviewed by Agent Hart at the ATF office. Mr. and Mrs. Holstrom, at a hearing on a Motion To Suppress Mrs. Holstrom's statements to Agent Hart, testified that they were unaware that the office they were directed to was, in fact, the Spokane ATF office. That office was not located in a government building, but in a commercial office building.

When Mr. and Mrs. Holstrom arrived at the ATF office on December 29, 2000, they were introduced to Agent Hart by Lt. Archer. Agent Hart informed the Holstroms that he desired to interview Mrs. Holstrom alone and that Mr. Holstrom could either wait in another office or leave and come back later. Mr. Holstrom testified that he was told by Agent Hart that he could not be present during the interview of Mrs. Holstrom. Mr. Holstrom's testimony in that regard was credible and

not contradicted by Agent Hart. Agent Hart told Mr. Holstrom that he could either wait in another office or come back later. Mr. Holstrom chose the latter and left the ATF office to conduct other business.

The following statements of the issues are based upon the testimony given at the evidentiary hearing before this judge on June 25, 2002 on the Defendant's Motion To Suppress. Mrs. Holstrom was interviewed by Agent Hart in a small ATF office in the presence of Lt. Archer. No-one else was present, although ATF Agent Bone watched and listened to a portion of the interview through a one-way mirror on the wall of the interview room.

Agent Hart did not tape record the initial portion of the interview of Mrs. Holstrom. The recording of only the subsequent alleged inculpatory statements by Mrs. Holstrom and not the earlier portion of the interview is problematic. According to Mrs. Holstrom, Agent Hart, during the unrecorded portion of the interview, confronted her with the Hotline call and informed her that she would face a ten year prison sentence if she did not cooperate and admit a role in starting the fire. Agent Hart specifically denied threatening Mrs. Holstrom in any manner. Mrs. Holstrom further testified that Agent Hart told her during the unrecorded session that if she admitted a role in the starting of the fire, she would only be charged with a misdemeanor and probably receive probation. Agent Hart denied that allegation. The recording of only a portion of an interview of a person suspected of a crime raise serious questions in finding the true facts. If the entire interview of Norma Holstrom had been recorded, the Government, the Defendant and the search for truth inherent in our criminal justice system, would have benefitted.

Agent Hart testified that during the unrecorded interview, he discussed the origin and circumstances of the cause of the fire with Mrs. Holstrom and then inquired of Mrs. Holstrom as to her activities in the house shortly before the fire started. Agent Hart testified that,again during the unrecorded interview, Mrs. Holstrom "showed signs of deception" and he inquired of Mrs. Holstrom if she was lying to him. Lt. Archer testified that Agent Hart's statements in this regard were "confrontational" and that Agent Hart directly accused Mrs. Holstrom of lying. Agent Hart further testified that at this time Mrs. Holstrom became emotional and that she stated that she had been praying to God for assistance and guidance in the matter.

Agent Hart testified that in the unrecorded portion of the interview, Mrs. Holstrom stated that she had become disgruntled over the length of time her husband was taking in completing the remodeling of the residence and that she brushed a bag of trash against the space heater in the hopes that it would cause a fire. Mrs. Holstrom testified that she made this semi-inculpatory statement to Agent Hart only after he had threatened her with a ten year sentence if she denied any involvement and was later found guilty of the arson. The court was furnished the state court testimony of Lt. Archer who testified that any discussion of possible charges and dispositions took place only after Mrs. Holstrom gave both her unrecorded and recorded statements. In any event, Agent Hart then produced a tape recorder, advised Mrs. Holstrom of her "Miranda" rights, and recorded the very short, inculpatory statement of Mrs. Holstrom. The transcript of that statement is Attachment 2 to the Response of the United States (C.R.15).

The suggestion was made that it was the opinion of Agent Hart that brushing or pushing the garbage against the space heater could not have caused the fire. Apparently Agent Hart was of the opinion that Mrs. Holstrom started the fire in some other manner. Agent Hart testified that after he recorded Mrs. Holstrom's admission, Mrs. Holstrom inquired as to what was going to happen to her. The timing of this inquiry was confirmed by Lt. Archer. Mrs. Holstrom was allowed to leave the office with her husband. She was subsequently charged with felony arson in state court where she was acquitted after the prosecution rested its case. Agent Hart and Lt. Archer were witnesses in that trial.

After the state court acquittal, Agent Hart brought the matter to the United States Attorney's office in this district. John C. Keeney, a Deputy Assistant Attorney General of the Department of Justice, signed a letter dated April 23, 2002 directed to the United States Attorney and Mr. Rice waiving the Justice Department's *Petite* policy against successive federal prosecutions after a state court acquittal, although that letter does not specifically and *eo nomine* set forth the "compelling federal interest" required for such a waiver. (See this letter attached to C.R. 36).

On May 7, 2002, an Indictment was filed in this court charging Mrs. Holstrom with Mail Fraud in Count 1 and Using Fire To Commit Mail Fraud in Count 2. She appeared pursuant to a Summons and entered Not Guilty pleas. Thereafter, counsel for the Defendant filed a Pretrial Motion (C.R.10) which, *inter alia*, sought the suppression of the Defendant's alleged statement to Agent Hart and dismissal of the charges against her.

An evidentiary hearing was held on June 25, 2002. Mrs. Holstrom testified that shortly after the completion of her interview by Agent Hart, she, at the suggestion of her husband, on January 2, 2001, prepared a written statement as to the circumstances of the December 29, 2000 interview including the claimed threats directed to her by Agent Hart prior to any alleged admission by the Defendant. At the June 25, 2002 hearing the Defendant admitted that she had not furnished this exculpatory statement to the attorney retained to defend her on the state of Washington arson charge. Because of the unavailability of Lt. Archer (he had been mobilized as a member of the Washington Air National Guard), the court requested that his testimony given at the state court trial be furnished to the court for its review in ruling upon the Motion To Suppress. That testimony was filed by the Government on June 28, 2002.

Prior to this court ruling on the Motion To Dismiss, the United States filed a proposed Order of Dismissal With Prejudice of all charges in the Indictment and an Order of Dismissal With Prejudice was entered by the court on July 8, 2002. Thus, at the time of the Order of Dismissal With Prejudice, the issue of the voluntariness of the Defendant's alleged admissions to Agent Hart was still pending and no adjudication thereon was made by the court. Mr. Rice, on behalf of the Government, stated at oral argument on the Hyde Amendment claim that the dismissal of this action was sought by reason of the unavailability of Lt. Archer to testify at the suppression hearing and at any subsequent trial, and also by reason of this court's questions at an earlier hearing as to the reasons for the successive prosecution. No suggestion was made that the dismissal was by reason of any concern by the prosecution that this court might find against the testimony of Agent Hart and no such inference should be drawn one way or the other. On August 8, 2002, Mrs.

Holstrom filed her Motion for an award of attorney fees (C.R.24) pursuant to the Hyde Amendment.

### THE PETITE POLICY CLAIM

■ Counsel for Mrs. Holstrom argues that the institution of this federal prosecution after the Defendant's acquittal of arson in state court on the same evidence proposed to be introduced in support of the charges in this case, constitute a violation of the *Petite* policy of the United States Department of Justice. That policy has existed since April 6, 1959 when it was promulgated by Attorney General Rogers. The policy followed from the decision of the United States Supreme Court in *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959) and was recognized by the Court in *Petite v. United States*, 361 U.S. 529, 531, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960), thus giving it the name of the *Petite* policy. That policy has remained in effect for the past 44 years. Twenty years after its adoption the United States Supreme Court in *Thompson v. United States*, 444 U.S. 248, 100 S.Ct. 512, 62 L.Ed.2d 457 (1980) set forth the policy as follows:

> The Department of Justice has a firmly established policy, known as the *"Petite"* policy, under which United States Attorneys are forbidden to prosecute any person for allegedly criminal behavior if the alleged criminality was an ingredient of a previous state prosecution against that person. An exception is made only if the federal prosecution is specifically authorized in advance by the Department itself, **upon a finding that the prosecution will serve** *"compelling interests of federal law enforcement."* (Emphasis supplied).

In the case *sub judice*, the letter of a Deputy Assistant Attorney General (attached to C.R. 36) dated April 23, 2002 constituted the formal waiver required in the *Petite* policy. Neither that letter nor the written or oral submissions of the Government in connection with the Hyde Amendment claim, sets forth specifically the "compelling interests of federal law enforcement" which were the basis for the waiver of the prohibition of the prosecution of Mrs. Holstrom in federal court after her acquittal in state court.

The Department of Justice policy forbids the prosecution of "any person for allegedly criminal behavior if the alleged criminal behavior was an ingredient of a previous state prosecution against that person." An exception to the policy is only allowed where there is a specific "finding" of "compelling interests of federal law enforcement." Where the proposed federal prosecution is not only subsequent to, but also follows an acquittal in state court for the same behavior considered by the finder of fact in the state court, the "compelling interests of federal law enforcement" would seem to require even closer scrutiny before a person is charged successively with the same conduct. The double jeopardy clause does not prohibit such a successive charge, but this court recognizes the costs, emotional and monetary, imposed on such a person charged for the second time after acquittal.

■ As stated, the letter of the Deputy Assistant Attorney General of April 23, 2002, does not make a specific finding of any "compelling interest of federal law enforcement." The sole reason stated in that letter authorizing the successive federal prosecution after the acquittal on the same facts in state court was "Her acquittal after a bench trial notwithstanding her confession to committing the arson fails to vindicate the federal interest in prosecuting such offense." There is also nothing in that letter that refers to any evidence of an intent by Mrs. Holstrom to use the

mails to defraud her insurance company and there was a complete lack of any evidence presented in this court as to any actions by Mr. or Mrs. Holstrom to increase the insurance on their home or to over-insure the home or its contents. The only evidence presented to this court concerning the insurance claim was that it was prepared and mailed by their attorney and signed by the insureds at their attorney's direction.

It appears to this court that the only "federal interest" in this matter, although certainly not a compelling one, was that Agent Hart was involved in the interrogation of Mrs. Holstrom and he testified in the state case. The experienced state court judge who found the prosecution's evidence lacking in that court did not adversely judge Agent Hart's testimony therein and as stated, *infra*, this court has not made an adverse finding, or any finding, as to the Agent's testimony.

Despite these obvious concerns about the lack of a "compelling interest of federal law enforcement," I conclude that it is not the role of this court to second guess the *Petite* policy waiver by the Deputy Assistant Attorney General or the decision of the United States Attorney for this district and his Assistant to pursue the matter in this court. This court's independent research has failed to find any case supporting an award of attorney fees under the Hyde Amendment where such an award was based upon the court's conclusion that the *Petite* waiver by the Attorney General, an Assistant Attorney General, or as in this case, a Deputy Assistant Attorney General, was even clearly erroneous, or completely lacking in substantive facts.

This court concludes that it has no role in weighing the merits of the *Petite* policy waiver, even if the waiver might be in clear contravention of the facts and fairness to a citizen previously acquitted in state court.

A valid *Petite* policy waiver showing a "compelling federal law enforcement interest" is not a condition precedent to the Indictment of a person. All that is required is a signed waiver by the Attorney General or his designee, regardless of a demonstrably lack of "compelling federal law enforcement interest." While the court has reviewed cases where the Justice Department has sought to dismiss prosecutions where a *Petite* policy waiver did not in fact exist, and while not called upon in this case to rule upon a dismissal motion where no waiver was ever executed, the separation of powers doctrine would seem to leave the prosecutorial decision to the Executive Branch, subject, hopefully, to the wise judgment and discretion of the United States Attorney, his Assistants, and the Grand Jury. If a higher court determines that this court plays some role in reviewing the adequacy of the *Petite* waiver or the findings made therein, it will, of course, accept that direction.

## VEXATIOUS, FRIVOLOUS, OR BAD FAITH CLAIM

As stated, the Hyde Amendment provides for the award of attorney fees and litigation expenses to a person who is the subject of a prosecution that is "vexatious, frivolous, or brought in bad faith." Prior to oral argument on this matter the Ninth Circuit Court of Appeals had set forth the standards in making the vexatious and frivolous determinations. See *United States v. Sherburne*, 249 F.3d 1121, 1126–27 (9th Cir.2001) (defining vexatious conduct); *United States v. Braunstein*, 281 F.3d 982, 995 (9th Cir.2002)(defining a frivolous case). Subsequent to oral argument herein, the Ninth Circuit, on January 10, 2003, decided *United States v. Manchester Farming Partnership*, 315 F.3d 1176, which for the first time in this circuit

defined "bad faith" under the Hyde Amendment.

It is clear that the burden of proof in this case differs from that under the Equal Access To Justice Act, 28 U.S.C. § 2412, where the claimant only bears the burden of proving that the Government's position was not "substantially justified." In this case the Defendant bears the burden of proving that the Government's position was vexatious, frivolous or in bad faith. *United States v. Lindberg*, 220 F.3d 1120, 1124 (9th Cir.2000).

As the Ninth Circuit has made clear "vexatious" has both a subjective and objective element: subjectively, the Government must have acted maliciously or with an intent to harass the Defendant; objectively, the action must be deficient or without merit. *Sherburne, supra,* at 1126–27. As to the subjective element of maliciousness or an intent to harass, Mrs. Holstrom contends that she was only prosecuted in federal court by reason of her acquittal in state court where ATF Agent Hart was the principal witness against her. The Defendant also argues that the actual lack of a "compelling interest of federal law enforcement" and the failure to state such a finding in the *Petite* letter should also be considered. However, the lack of such a finding in the *Petite* waiver does not necessarily indicate an intent to harass the Defendant or prosecute her maliciously.

If a jury, in the trial of this case, gave substantial weight to the testimony of Agent Hart concerning the Defendant's alleged admission and further found that the brushing of the garbage into the electric space heater was the actual cause of the fire and was done with the intent to commit arson and mail fraud, such findings could have been sufficient to support a finding of guilty. Whether the Government's evidence would be sufficient to make out a *prima facie* case at trial would,

of course, have had to await the actual trial. This court cannot say that the only reason this Indictment was sought was to punish the Defendant for her acquittal in state court as opposed to a prosecution for arson for the purpose of committing mail fraud. The court therefore concludes that the former Defendant has failed to carry her burden to establish the subjective element that the prosecution of Mrs. Holstrom by the Government was malicious or with the intent to harass her. While this court believes that there would not have been a federal prosecution absent the involvement of Agent Hart, this does not contradict the court's finding of an absence of maliciousness, intent to harass, or ill intent.

Counsel for Mrs. Holstrom strenuously argues that the objective element of "vexatious" conduct has been established based upon the Government's pursuit of this case knowing that the alleged confession or admission of the Defendant was procured through unlawful inducement or threats on the part of Agent Hart. While this case was dismissed by the Government prior to the court ruling on the Motion To Suppress, this court had the opportunity to hear Agent Hart's testimony on June 25, 2002. There was nothing presented to the court in the way of *Henthorn* materials, *United States v. Henthorn*, 931 F.2d 29 (9th Cir.1991), that raised any question about Agent Hart's past or present reputation for truthfulness. His testimony was supported by that of Lt. Archer. The only possible difference in the testimony of Agent Hart and Lt. Archer was as to the issue of whether Agent Hart "confronted" Mrs. Holstrom as to her truthfulness. That difference may well have been a matter of semantics.

There was nothing in Agent Hart's testimony or in other matters presented to the court that would serve as a basis for a

finding that Mr. Rice believed Agent Hart's testimony to be untruthful. While Agent Hart's testimony concerning the December 29, 2000 interview was challenged by Mrs. Holstrom, such a challenge, in and of itself, as is often the case in suppression hearings, cannot be the basis for a conclusion that Mr. Rice, at the time of the Indictment, should have determined that Mrs. Holstrom's subsequent testimony was the correct version of the events. This court's recollection of the testimony of Agent Hart indicates that there was nothing to cause Mr. Rice, at the time of the return of the Indictment, to disbelieve the statements and report of the Agent and Lt. Archer.

■ The second element of the Hyde Amendment which can be the basis for the award of attorney fees is if the Defendant establishes that the Government pursued a "frivolous" case. A frivolous case is one that is groundless, with little prospect of success or brought to embarrass or annoy the Defendant. *Braunstein, supra,* at 995. Likewise, a case is "frivolous" when the "Government's position" was foreclosed by binding precedent or so obviously wrong as to be frivolous. *United States v. Gilbert,* 198 F.3d 1293, 1304 (11th Cir.1999). While the court is troubled by the lack of showing of "a compelling federal law enforcement interest" as would justify the institution of this action after a state court acquittal on the same facts, this court has held, *supra,* that the *Petite* waiver is a matter solely within the discretion of the Department of Justice, and not one for this court. Depending on the Government's proof, it may have faced serious challenges at the completion of its case in chief by way of a F.R.Crim. P. 29 Motion and/or in convincing a jury that it had proved the charges beyond a reasonable doubt. However, this court is unable to find that the Government's position was groundless or "so obviously wrong as to be frivolous." *Gilbert, supra,*

The Government further argues that since the Grand Jury returned an Indictment in this matter, there was probable cause for the prosecution of Mrs. Holstrom and therefore, a finding of a groundless prosecution or one that it was so obviously wrong as to be frivolous was precluded. This position is not supported by existing authority. The role of the Grand Jury in the federal criminal justice system has been the subject of much discussion and literature. Clearly, if properly exercised, the authority of the Grand Jury will stand as an independent check on the executive branch and its prosecutors.

The Grand Jury needs to be properly charged as to its role and its right to refuse to indict if it so chooses. A Defendant is not entitled to present his or her side of a case to the Grand Jury. A targeted person is not entitled to be represented by counsel before the Grand Jury and the sole charge as to the legal elements is provided by the prosecution. It would seem appropriate for the prosecution, in its charge in each case, to remind the Grand Jury that it is not required to return an Indictment, even if sought by the prosecution. This court has, in the past twenty-three years, reviewed innumerable transcripts of Grand Jury charges by the prosecution and is yet to see such a charge to the Grand Jury by the prosecution. Certainly, at the time a Grand Jury is initially selected, it should be informed by the presiding judge of its complete independence and the fact that it is never obligated to return an Indictment when sought by the prosecution. However, Grand Juries serve for many months at a time and this initial charge by the court at the time of selection of the grand jurors may easily escape their attention after hearing many cases. It is the practice of this judge, whether sitting in the Eastern District of Washington or elsewhere, to

remind the grand jurors of this independent role at each time grand jurors are before the court for their monthly return of Indictments.

An excellent discussion of the concerns for the independence of the Grand Jury is found in *United States v. Marcucci,* 299 F.3d 1156 (9th Cir.2002) and particularly by the wise statements of Judge Michael Hawkins, whose extensive experience with Grand Juries prior to appointment to the federal bench included service as the United States Attorney for the District of Arizona. While the majority in the *Marcucci* case found that the United States Constitution and its Amendments do not *require* that the Grand Jury be informed that they can refuse to indict even if they find probable cause, the majority does not find legal error in such a charge. The *per curiam* opinion did recognize the concerns over the failure of current grand jurors to exercise their complete independence, citing Roger Roots, *If It's Not a Runaway, It's Not a Real Grand Jury,* 33 CREIGHTON L. REV. 821 (2000) (grand juries rarely challenge federal prosecutors and "there is no such thing as modern grand jury independence" since Federal Rules of Criminal Procedure were enacted in 1946).

The House–Senate Conference Committee report which accompanied the Hyde Amendment expressly stated that "the conferees understand that a grand jury finding of probable cause to support an indictment does not preclude a judge from finding that the prosecution was vexatious, frivolous, or brought in bad faith," H.R.Rep. No. 104–405 (1997). This must clearly be the rule since the Hyde Amendment would be a complete nullity if an Indictment precluded a Hyde Amendment fee award since the Fifth Amendment always requires a Grand Jury Indictment before a person may be charged.

 Having determined that neither the elements of vexatiousness or frivolousness

have been established by the required proof, the final consideration of the court is to determine if the element of "bad faith" has been established by the applicant. In *United States v. Manchester Farming Partnership, supra,* the Ninth Circuit adopted the "bad faith" definition of the Eleventh Circuit in *United States v. Gilbert,* 198 F.3d 1293, 1299 (1999). That court held that "bad faith is not simply bad judgment or negligence, but rather implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will," For the reasons above stated, this court does not find that the prosecution of Mrs. Holstrom, even after her acquittal in state court on the same facts, was the result of ill will or furtive design.

### CONCLUSION

While this court is unable to find a "compelling interest of federal law enforcement" in the prosecution of Mrs. Holstrom a second time after an initial acquittal, the lack of such a finding does not establish that the prosecution was for vexatious, frivolous, or bad faith reasons. In the words of the *Manchester Farming Partnership* case, "the Government's approach to this case, troublesome though it may be, does not rise to the level of 'bad faith'." . . . "Bad faith is not established by bad judgment or negligence." To the credit of those in charge of this prosecution, the Government did promptly dismiss this case as soon as it became apparent that serious questions existed that warranted such a dismissal with prejudice. That dismissal, of course, does not alleviate the emotional and monetary expense suffered by Mrs. Holstrom prior thereto, or this court's concern about the seemingly lack of "compelling federal law enforcement interest" in the *Petite* waiver that led to the Indictment in this case after a state court acquittal.

In a prominent place in this court's chambers on a plaque presented by a former Law Clerk, are the words of the Supreme Court of Israel in dismissing in 1993 the case against John Demjanjuk, originally thought to be the alleged "Ivan The Terrible", after his conviction and death sentence on a charge in Israel of being a conspiratorial member of the holocaust abuses and murders during World War II. Subsequent to that conviction and sentence, the very same Israeli prosecutors who obtained the conviction and death sentence sought and discovered evidence raising serious issues as to his identity and guilt and moved for dismissal of the charges. The Supreme Court of Israel, in dismissing the charges, stated:

> The matter is closed-but not complete.
>
> The complete truth is not the prerogative of the human judge.

The obligations of all parties, counsel and the courts in the search for the truth is reflected in *Demjanjuk v. Petrovsky,* 10 F.3d 338 (6th Cir.1993) where the Sixth Circuit Courts of Appeals, *sua sponte,* reopened its 1982 order approving Demjanjuk's extradition to Israel and set aside that prior order upon a finding of fraud upon the court by Department of Justice attorneys in the extradition proceeding. Obviously, this court plays no role in judging the actions of the Supreme Court of Israel or those of the United States Court of Appeals for the Sixth Circuit. Those decisions, however, reflect the proper concern for the rule of law and the application thereof, regardless of the consequences.

The court's determination in this case, as often occurs in matters of this kind, turns not upon a finding of complete truth, but rather upon the insufficiency of the evidence that is required under the very limited circumstances of the Hyde Amendment. The court is aware that Representative Hyde (R–Ill.) initially attempted to have legislation passed that would have allowed for the award of attorney fees to Mrs. Holstrom in this case. Those efforts were unsuccessful.

For the foregoing reasons, and those stated at the close of oral argument on this Motion, this court must reluctantly deny the Motion For Award of Attorney Fees repeating its concern over the "lack of compelling federal law enforcement interests" in the Indictment of Mrs. Holstrom.

The Clerk of this court shall enter this Order, enter judgment denying the Motion For Attorney Fees, forward copies to counsel, and close this file.